IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Michael E. Hamm, | ) CIVIL ACTION NO. 9:15-4668-RMG-BM |
| Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| Dr. Mittal, | ) |
| Defendant. | ) |

This action was originally filed by the Plaintiff in the South Carolina Court of Common Pleas, Richland, County. Plaintiff, a civilly committed inmate under the South Carolina Sexually Violent Predator's Act (SVPA), S.C.Code Ann. § 44-48-60, et seq., filed this action pro se alleging violations of his constitutional rights. As Plaintiff asserts his claims through 42 U.S.C. § 1983[1] as well as the Americans with Disabilities Act (ADA), the Defendants removed the case to this United States District Court on November 11, 2015 on the basis of federal question jurisdiction.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on March 18, 2016. As the Plaintiff is proceeding pro se, a Roseboro order was

---

[1] 42 U.S.C. § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). A civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

1



entered by the Court on March 21, 2016, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Thereafter, on April 28, 2016, Plaintiff filed a stipulation of dismissal with respect to the Defendants Scaturo and Sanders, along with a memorandum in opposition to the remaining Defendant's (Mittal) motion for summary judgment.

The Defendant Mittal filed a reply to the Plaintiff's response to his motion for summary judgment on May 10, 2016, following which Plaintiff filed a sur reply on May 27, 2016. The remaining Defendant's motion is now before the Court for disposition.[2]

### Background and Evidence[3]

Plaintiff, a frequent filer of litigation in the state and federal courts, alleges in his Complaint[4] that he has been diagnosed with tinnitus in both ears due to a chronic medical condition, and that he has been trying to receive a hearing test since December 2014. Plaintiff alleges that his tinnitus makes it hard for him to hear voices, announcements over the intercom, and the television.

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996). However, as the originally named Defendants Scaturo and Sanders have now been dismissed from this action, the facts and evidence are discussed hereinabove only as they relate to the remaining Defendant, Dr. Shalini Mittal.

[4]Plaintiff's Complaint does not appear to be a verified pleading. See Court Docket No. 1-2, p. 44; see also Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) [Noting that *verified* complaints by pro se litigants are considered as affidavits with respect to any factual allegations contained therein that are based on personal knowledge].

2



Plaintiff alleges that the Defendant Mittal has been deliberately indifferent to his medical care and needs by denying him a hearing test. See Plaintiff's "Issue 1", with attached Exhibits (Medical Request Forms). Plaintiff further alleges he has been trying to get some lesions looked at by a dermatologist for "years", as neither the nurse practitioners nor Dr. Mittal can "seem to figure out what is causing the lesions". Plaintiff alleges that Dr. Mittal has been trying different "types of creams" on his lesions for four years, to no effect, while the last cream he received from "Dr. Shaver", per Dr. Mittal, "just made it worse and I threw it out". Plaintiff complains that his lesions drain fluid, hurt, itch and "bleed all over my pillow cases". See Plaintiff's "Issue 2", with attached Exhibits (Medical Request Forms).

Finally, Plaintiff alleges that in October 2012 he had part of his small intestines removed, and was told that he had Crohn's Disease, a side effect of which is rheumatoid arthritis. Plaintiff alleges, however, that there is or was a disagreement between his doctors and the physical and occupational therapist as to whether he actually has rheumatoid arthritis, or whether he just has osteoarthritis. Plaintiff alleges that Dr. Shaver requested that he receive a blood test to see which of these conditions he suffers from, but that "Dr. Mittal turned it down". Rather, "they" (presumably to include Dr. Mittal) give him Motrin, Tylenol, and "Ultra" to try and stop the pain "that I am going thru daily". Plaintiff complains that the Defendant is just pumping him "full of pain pills", which are not stopping most of his pain. In addition to violating his constitutional rights, Plaintiff alleges that Dr. Mittal's failure to allow him to have a blood test and properly diagnose his condition is violating his statutory right of care under South Carolina law, as well the ADA, the Rehabilitation Act of 1973, and the Omnibus Adult Protection Act. See Plaintiff's "Issue 3", with attached Exhibits (Medical Request Forms).


Plaintiff seeks various declaratory and/or injunctive relief, as well as monetary damages.  See generally, Plaintiff's Complaint, with attached Exhibits.

In support of summary judgment in the case, Dr. Mittal has submitted an affidavit wherein he attests that he is employed by the South Carolina Department of Mental Health as an internist in the Department's medical clinics.  Dr. Mittal attests that Plaintiff is a resident of the Sexually Violent Preditor Treatment Program, and that he has seen and treated the Plaintiff as reflected in the medical records attached to his affidavit.  Dr. Mittal attests that during Plaintiff's assignment to the SVP Treatment Program, he has been seen and treated for numerous physical complaints and ailments; has been regularly followed by the neurology clinic, the orthopedic clinic, and the gastrointestinal clinic; and that he has also been sent out for diagnostic testing including x-rays, CT scans, MRIs, GI testing, as well as for other procedures.

With respect to the specific claims Plaintiff is alleging in this lawsuit, Dr. Mittal attests that on May 13, 2014 he saw the Plaintiff for several complaints, including his complaint of a buzzing sound in both ears which was diagnosed as tinnitus.  Dr. Mittal attests that an ear exam was unremarkable, and that after consultation with Dr. Mirosalv Cuturic in the neurology clinic, he ordered a decrease in Plaintiff's dosage of Neurotin to address the tinnitus, as tinnitus can often be a side effect of certain medications.  Dr. Mittal attests that he saw Plaintiff again on October 16, 2014, at which time an ear exam was again unremarkable.  Dr. Mittal noted that Plaintiff's tinnitus was of an unknown etiology, and that he made some changes in Plaintiff's medications to try to address this issue.  However, Dr. Mittal attests that although there are medications that can be used to relieve tinnitus, there is no specific cure for tinnitus.

Dr. Mittal attests that on December 15, 2014, Nurse Practitioner Michelle Meyers



made a referral of the Plaintiff to the medical clinic for a hearing test at Plaintiff's request. Dr. Mittal attests that although he initially approved a hearing test for the Plaintiff on January 5, 2015, the very next day, January 6, 2015, Meyers reported that Plaintiff had made a request for earplugs because he was unable to sleep due to the noise outside his room. Dr. Mittal attests that this complaint was inconsistent with Plaintiff's complaint about not being able to hear, and that after consulting with Meyers, a decision was made to cancel the scheduled hearing test in order to further evaluate whether there was a medical need for such a test in light of Plaintiff's request for ear plugs. Dr. Mittal has attached a copy of his notes regarding the cancellation of the hearing test as well as Nurse Practitioner Meyers' notes as an exhibit to his affidavit. Dr. Mittal attests that Plaintiff continues to be followed for his complaints of tinnitus, primarily by Dr. Cuturic in the neurology clinic, and that on February 16, 2016 Dr. Cuturic recommended that Plaintiff be sent for an audiogram for evaluation. Dr. Mittal attests that he approved that referral on February 22, 2016, and that Plaintiff was scheduled to receive an audiogram on March 18, 2016.[5]

With respect to Plaintiff's complaint that he has not been referred to a dermatologist for treatment of skin lesions on his right scalp and on his arm, Dr. Mittel attests that the Department of Mental Health does not have a dermatologist on staff nor any contract with a dermatologist. Dr. Mittal attests that while the Department of Mental Health has attempted to contract dermatology practices, the Department has not been able to find a dermatologist who is willing to see the Department's patients, although Plaintiff may of course arrange for his own appointment with a dermatologist. In any event, even though referral to a dermatologist by the Department of Mental Health is not possible, Dr. Mittal attests the Department of Mental Health medical staff, including

---

[5]Dr. Mittal's affidavit is dated March 17, 2016.

5



himself, continue to treat Plaintiff for his complaints of lesions.

Dr. Mittal attests that on February 16, 2016 he saw Plaintiff for his skin lesions in the medical clinic, at which time it was noted that Plaintiff had four lesions that were in varying stages of healing. Plaintiff also had one additional pin head lesion on his nose. Dr. Mittal attests that he prescribed treatment with Efudex cream twice a day for two weeks, to be followed by one week without treatment, followed by two additional weeks of treatment with the Efudex cream. Dr. Mittal attests that Plaintiff had previously been prescribed several creams and topical ointments for treatment of his lesions, but that since these require self application, there was no documentation as to whether these creams had been applied correctly or at all by the Plaintiff. Therefore, this time Dr. Mittal specifically directed that staff, rather than the Plaintiff, apply the cream. Dr. Mittal attests that he further directed that Plaintiff be referred to Dr. James Nottingham of the surgical clinic after this treatment regimen had been completed, and that Plaintiff has an appointment scheduled with Dr. Nottingham for April 6, 2016. Dr. Mittal further attests that if this treatment regimen did not result in marked improvement, Plaintiff would be referred to a plastic surgeon for further consult and care, should that be Dr. Nottingham's recommendation.[6]

Finally, with respect to Plaintiff's complaint that he has not been referred to a rheumatologist nor given a blood test to determine if he has rheumatoid arthritis, Dr. Mittal attests that Plaintiff has not been given a definitive diagnosis of Crohn's Disease. Dr. Mittal attests that

---

[6]Dr. Mittal attests that Plaintiff had previously been seen by Dr. Nottingham on January 6, 2016 for an evaluation of his skin lesions, but that Dr. Nottingham's recommendation of a referral to a plastic surgeon at that time had been postponed in order to first try the tropical treatment regime using the Efudex cream, since there was no indication in the record that the topical treatment prescribed in the past had actually been administered properly or at all since the Plaintiff had been instructed to self apply the treatment.



Plaintiff was seen in the GI clinic by Dr. Balbir Minhas on July 17, 2015, who reported that there was no evidence that Plaintiff had active Crohn's Disease.  Prior to that visit, Plaintiff had been sent for upper GI and small bowel testing, the findings of which were reported as normal.  Those results are attached to Dr. Mittal's affidavit as an exhibit.  Further, a colonoscopy performed on June 5, 2015 at Palmetto Health Richland showed only "mild colitis found in the rectum".  Dr. Mittal also attests that biopsies taken during this colonoscopy do not support a diagnosis of Crohn's Disease.  Finally, Dr. Mittal attests that Plaintiff shows no objective findings that would support a diagnosis of rheumatoid arthritis - Plaintiff has no joint deformities which are typically indicative of rheumatoid arthritis, nor have x-rays shown any rheumatoid arthritis.  Therefore, Dr. Mittal attests that a referral of the Plaintiff to a rheumatologist is not indicated at this time.

    In conclusion, Dr. Mittal attests that, in his professional opinion and to a reasonable degree of medical certainty, Plaintiff has received and continues to receive an appropriate level of care for his diagnosed conditions.  Dr. Mittal further attests that the medical decisions he has made and the level of care that Plaintiff has received from him have been appropriate and within the professional standard of care.  <u>See</u> <u>generally</u>, <u>Mittal Affidavit</u>, with attached Exhibits (Medical Records).

    As attachments to his response in opposition to the Defendant's motion for summary judgment, Plaintiff has attached numerous exhibits, to include practitioner notes, medical requests and referrals, x-ray results, and consultation notes.  As an attachment to his sur reply, Plaintiff has submitted a partial transcript of what is represented to be a commitment hearing from September 7, 2011.



**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

Here, after careful review and consideration of the arguments and evidence submitted, the undersigned finds for the reasons set forth hereinbelow that the Defendant Mittal should be granted summary judgment in this case.

**I.**

**(Medical Claim as a Constitutional Violation)**

Plaintiff is being held by the State Department of Mental Health pursuant to the provisions of the SVPA. The SVPA and its procedures have been upheld as a constitutionally valid exercise of the State's power to protect citizens from sexually violent predators. In re: Luckabaugh,



568 S.E.2d 338 (S.C. 2002). Under the SVPA, an individual convicted of a sexually violent offense may continue to be held following release from a prison sentence if they are classified as a sexually violent predator; see S.C. Code Ann. § § 44-48-60, 44-48-70; and the SCDC and the Department of Mental Health have entered into an interagency agreement whereby the Sexually Violent Predator Treatment Program residents are housed in a segregated location within the Broad River Correctional Institution (BCI).

As an involuntarily committed patient,[7] Plaintiff retains a liberty interest in receiving reasonable care in a reasonably non-restrictive condition of confinement. Youngberg v. Romeo, 457 U.S. 307, 324 (1982); see Seling v. Young, 531 U.S. 250, 265 (2001) ["[D]ue process requires that the conditions and duration of confinement under the [Sexually Violent Predator] Act bear some reasonable relation to the purpose for which persons are committed"]. As a civilly committed

---

[7]In his response filed to the Defendant's motion for summary judgment, as well as in his sur-reply, Plaintiff makes the argument that he is not an "involuntarily" committed patient, but that he is a "voluntary" resident of the treatment facility where he is housed. Plaintiff has included as a exhibit to his sur-reply what purports to be a portion of a transcript of a commitment hearing held September 7, 2011, which appears to reflect that Plaintiff waived his right to a trial and consented to his commitment as an SVP patient. See Plaintiff's Exhibit (Court Docket No. 32-1). However, Plaintiff having waived his commitment hearing and consented to his commitment does not make him a "voluntary" patient at the Broad River Correctional Institution. Plaintiff is not free to leave that facility, and would either have to have his underlying convictions overturned or a determination made that he is not a sexually violent predator under the applicable state statutes before he could be released. Indeed, as correctly noted by the Defendant, Plaintiff has himself conceded in another legal action filed in this Court that he has been involuntarily civilly committed and is "in custody" of the State. See Hamm v. South Carolina, No. 13-771, 2013 WL 3107571, at * 1 (D.S.C. June 18, 2013) ["[Plaintiff] clarifies that he is 'in custody' after waiving his right to contest his civil commitment pursuant to South Carolina Sexually Violent Predator Act . . . . Thus, [Plaintiff] challenges his involuntary civil commitment by the State"]; see also Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970)[a federal court may take judicial notice of the contents of its own records]. Therefore, Plaintiff's argument that he is not an "involuntary committed patient" is without merit.

9



inmate, Plaintiff's custody status most closely resembles that of a pre-trial detainee. Lingle v. Kibby, 526 Fed.Appx. 665, 667 (7th Cir. Apr. 15, 2013) [Civilly committed persons are treated as pretrial detainees]; Valbert v. South Carolina Dep't. of Mental Health, No. 12-1973, 2013 WL 4500455 at * 9 (D.S.C. Aug. 20, 2013) [same]; Treece v. McGill, No. 08-3909, 2010 WL 3781695 at * 4 (D.S.C. Sept. 21, 2010)["A civilly committed individual under the SVPA most closely resembles the custody status of a pre-trial detainee."] (quoting LaSure v. Doby, No. 06-1527, 2007 WL 1377694 at * 5 (D.S.C. May 8, 2007); Tillman v. Dixon, No. 10-5032, 2011 WL 5119187 at * 9 (W.D.Wash. Aug. 12, 2011)[The rights of those civilly committed are analyzed using same standards that apply to pretrial detainees], adopted by, 2011 WL 5118750 (W.D.WAsh. Oct. 27, 2011); cf. Larch v. Gintoli, 04-1962, 2006 WL 895019, at ** 3-4 (D.S.C. Mar. 31, 2006). Therefore, Plaintiff's conditions of confinement claim is evaluated under the due process clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535, n. 16 (1979); but see also Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988) [Holding that the Fourteenth Amendment guarantees at least Eighth Amendment protections].

Plaintiff is alleging that his constitutionally protected rights are being violated because he is receiving inadequate medical treatment and care for his complaints. However, liability may be imposed in Plaintiff's § 1983 action alleging violation of a constitutional right to adequate medical care only if there is evidence to show that "the decision by the professional [Mittal] is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment". Youngberg, 457 U.S. at 323. Further, "[i]n determining whether the State has met its obligations . . . decisions made by the appropriate professional are entitled to a presumption of correctness. Such



a presumption is necessary to enable institutions of this type . . . to continue to function". Id, at 324. Therefore, in order to avoid summary judgment, Plaintiff would need to have submitted evidence sufficient to create a genuine issue of fact as to whether Dr. Mittal failed to exercise the level of professional judgment required by Youngberg.  See Patten v. Nichols, 274 F.3d 829, 838 (4th Cir. 2001) [Denial of medical care claim brought by an involuntarily committed patient "must be measured against the professional judgment standard articulated by the [Supreme] Court in Youngberg"]; see also Kollyns v. Chavez, No. 05-3022, 2006 WL 2459484, at * 2 (D.S.C. Aug. 23, 2006) ["To state a claim pursuant to the Fourteenth Amendment requires a plaintiff to provide proof of more than mere negligence in diagnosing and treating medical complaints"]. Plaintiff has failed to submit any such evidence.

A review of the exhibits Plaintiff attached to his Complaint which relate to his remaining claims show that in response to his numerous medical requests inquiring about his medical conditions, Plaintiff was routinely "referred to medical clinic" and "seen", and that he was provided with medications. Plaintiff was also advised, in response to a request dated June 1, 2015 asking that he have a hearing test performed, that this required "Medical Director approval". See Exhibit (Court Docket No. 1-2, p. 19). With respect to this request, Dr. Mittal attests to Plaintiff's original schedule for testing, why it was postponed, and that Plaintiff was re-scheduled to have a test performed. Plaintiff has provided no evidence to dispute this representation. Further, another medical request form from June 2015 reflects that Plaintiff was to be seen by Dr. Mittal for his complaints of skin lesions. See Exhibit (Court Docket No. 1-2, p. 23).

A review of the medical documents Plaintiff has attached to his response to the Defendant's motion for summary judgment also reflect that Plaintiff was frequently seen, assessed,



and treated by medical professionals at his treatment facility. One of Plaintiff's exhibits confirms the evidence submitted by the Defendant that Plaintiff's audiology appointment was cancelled by Dr. Mittal after Plaintiff complained that it was too loud where he was housed. This exhibit (notes from Nurse Practitioner) states: "Dr. Mittal feels that audiology appt should be canceled as it is not medically indicated at this time if [Plaintiff] can hear to the point that Unit noise is too loud & is now requesting ear plugs". See Exhibit (Court Docket No. 23-1, p. 4). Plaintiff's exhibits also contain physician and other medical notes dating back as far as August 2013 relating to Plaintiff receiving treatment for his complaints of lesions, while a practitioner order dated March 2014 confirms Dr. Mittal's statement in his affidavit that Plaintiff was provided steroid treatment for his lesions that was to be administered by the nurse, and "not given to the [Plaintiff] for self medication". See Exhibit (Court Docket No. 23-1, p. 13). There are also several exhibits discussing the effectiveness of, and adjustments to, medications Plaintiff was receiving for possible Crohn's Disease. None of these exhibits constitute evidence that anything Dr. Mittal was doing was "a substantial departure from accepted professional judgment, practice or standard". Youngberg, 457 U.S. at 323; see also Savidge v. Fincannon, 836 F.2d 898, 907-908 (5th Cir. 1988) [Civilly committed patients right is to "minimally adequate . . . medical care"]; Patton, 274 F.3d 845-846 [Granting summary judgment where the evidence was insufficient to give rise to a genuine issue of fact that the defendants "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional."].

Conversely, the Defendant's evidence is from a licensed physician who attests that to a reasonable degree of medical certainty, Plaintiff has received and continues to receive an appropriate level of care for his diagnosed conditions and that the decisions made and the level of



care Plaintiff has received has been appropriate and within the professional standard of care. Further, in addition to the affidavit from Dr. Mittal attesting to the nature and quality of care Plaintiff has received, the Defendant has submitted numerous medical records which also reflect that Plaintiff received frequent, ongoing care for his medical problems and complaints.[8] Critically, Plaintiff has presented no evidence whatsoever (medical or otherwise) to support his own subjective opinion that Dr. Mittal provided him with constitutionally inadequate medical care or that the care he provided constituted a "substantial departure" from accepted professional norms. Rather, Plaintiff sets forth only his own lay opinion that the medical care and treatment Dr. Mittal provided was inadequate. Such lay statements and complaints, without any competent supporting medical evidence, are simply not sufficient to avoid summary judgment. Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]); Youngberg, 457 U.S. at 322-323 ["Courts must show deference to judgment exercised by a qualified professional]; cf. Malik v. Sligh, No. 11-1064, 2012 WL 3834850, at * 5 (D.S.C. September 4, 2012), aff'd. 507 Fed. Appx. 294 (4th Cir. 2013) [Finding that a self serving affidavit from the Plaintiff was "simply not enough to create a genuine dispute as to any material fact" in light of the other evidence that disputed the credibility of Plaintiff's self serving claims]; see also

---

[8] It is also worth noting that in another one of Plaintiff's cases, Hamm v. Scaturo, Civil Action No. 9:15-2734, significant additional evidence was submitted showing substantial treatment of the Plaintiff by other medical professionals at the treatment facility (who were named as Defendants in *that* case) for his complaints of tinnitus, arthritis and orthopedic problems during this same general time period. Aloe Creme Laboratories, Inc., 425 F.2d at 1296 [a federal court may take judicial notice of the contents of its own records]. The Defendants were granted summary judgment in that case.



Drakeford v. Thompson, No. 09-2239, 2010 WL 4884897, at * 3 (D.S.C. November 24, 2010), citing Larken v. Perkins, 22 Fed. Appx. 114, 115 (4th Cir. 2001)[Noting that non-movant's "own, self-serving affidavit containing conclusory assertions and unsubstantiated speculation, . . . [is] insufficient to stave off summary judgment"].

In sum, nothing in the evidence and exhibits before this Court gives rise to a genuine issue of fact as to whether Dr. Mittal violated or substantially departed from accepted professional norms in dealing with Plaintiff's medical complaint. While Plaintiff may not agree with the extent and nature of the medical care provided by Dr. Mittal, he cannot simply allege in a conclusory fashion that Dr. Mittal provided him constitutionally inadequate medical care or attention, otherwise provide no supporting evidence other than his own subjective lay opinion, and expect to survive summary judgment, particularly when the Defendant has submitted sworn testimony as a qualified medical professional and medical records which refute his claims. See House v. New Castle County, 824 F.Supp. 477, 485 (D.Del. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; see also Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; United States v. Charters, 863 F.2d 302, 312 (4th Cir. 1988) [Youngberg standard met where medical care is provided pursuant to the "professional judgment [of] those who have the responsibility for



making medical decisions . . . ."]. Therefore, Plaintiff's claim that he has been provided with constitutionally inadequate medical care is without merit and should be dismissed.

## II.

### (ADA/Rehabilitation Act Claim)

It is unclear exactly what Plaintiff is asserting with respect to his citations to the ADA or § 504 of the Rehabilitation Act, or how those statutes apply to the claims he is asserting against Dr. Mittal. In any event, Dr. Mittal is not subject to liability under either one of those statutes. Cf. Smith v. South Carolina Department of Corrections, No. 03-795, 2003 WL 23851177, at n. 1 (D.S.C. Aug. 11, 2003); Anderson v. South Carolina Department of Corrections, No. 09-402, 2009 WL 5031305 at n. 7 (D.S.C. Dec. 14, 2009). Therefore, these claims are subject to dismissal for failure of the Plaintiff to sue a proper party Defendant with respect to these claims.

Additionally, even if Plaintiff had sued the proper party Defendant (which in this case would have been the South Carolina Department of Mental Health, which is a state agency), States have sovereign immunity from suit under Title II of the ADA absent a corresponding constitutional violation. See Wessel v. Glendening, 306 F.3d 203 (4th Cir. 2002), overruled in part by United States v. Georgia, 546 U.S. 151, 159 (2006). Hence, as the undersigned has already found that Plaintiff has failed to submit evidence sufficient to give rise to a genuine issue of fact as to whether a constitutional violation has occurred in this case, Plaintiff's claims under the ADA would be subject to dismissal even if a proper party Defendant had been named, and must therefore be dismissed. Cf. Capell v. Carter, No. 13-586, 2014 WL 197756 (D.S.C. Jan. 16, 2014); but see, Sossamon v. Texas, 131 S.Ct. 1651, 1662 (2011) [Discussing sovereign immunity with respect to Rehabilitation Act claim].



### III.

### (Omnibus Adult Protection Act)

Plaintiff also references the Omnibus Adult Protection Act in his Complaint. See S.C.Code Ann. § 43-35-5, et seq. However, while a private cause of action may exist under the Omnibus Adult Protection Act, Plaintiff has failed to name a proper party defendant for any state law claims being asserted, as the private cause of action provided for would be a tort for "abusing, neglecting, or exploiting" a vulnerable adult[9] as defined in the Act. Williams-Garrett v. Murphy, 106 F.Supp.2d 834, 843 (D.S.C. 2000). The South Carolina Tort Claims Act provides that the proper party Defendant for any such claim would be the Department of Mental Health. See S.C. Code Ann. § 15-78-70(c). Therefore, any such claim is subject to dismissal for failure to name a proper party Defendant.[10]

---

[9]Since Plaintiff is in a facility operated by the Dept. of Mental Health, he is considered a "vulnerable adult" under the statute and protected. See S.C. Code Ann. § § 43-35-10 and 43-35-10(4).

[10]Defendant also asserts that, even if Plaintiff had named the Department of Mental Health as the party Defendant for this state law claim, it would be subject to dismissal because, in enacting the South Carolina Tort Claims Act, the State specifically retained its Eleventh Amendment immunity from suit in federal court. See Defendant's Brief, p. 14, n. 1; see also S.C.Code Ann. § 15-78-70(a). However, by removing this case to federal court from state court, the State has waived any immunity it had from suit (if Plaintiff had named the proper party Defendant) as to any claims to which the State has made itself subject to suit in state court. Lapides v. Board of Regents of the Univ. System of Georgia, 535 U.S. 613, 619 (2002)[A state's voluntary appearance in federal court waives sovereign immunity to claims where a state has consented to suit in its own courts for such claims]; see also Cameron v. Cox, No. 10-1278, 2011 WL 1235308 at * 4 (D.S.C. Jan. 21, 2011) adopted by, 2011 WL 1212177 (D.S.C. Mar. 30, 2011). Therefore, if Plaintiff had named the proper party Defendant for his state claim, by removing this case, the State's immunity from suit in this Court for any claim allowable under the South Carolina Tort Claims Act would be waived.

However, this waiver of immunity does not extend to claims for which the State has not waived its immunity from suit in state court. Cf. Stewart v. North Carolina, 393 F.3d 484, (4th Cir. 2005)[finding no waiver where state has not consented to suit in its own courts for such claims]. The
(continued...)

16



Moreover, even if Plaintiff *had* named a proper party Defendant, since the federal claims Plaintiff is asserting are subject to dismissal, this Court should not retain jurisdiction over this exclusively state law cause of action in any event. See Lovern v. Edwards, 190 F.3d 648, 655 (4th Cir. 1999) ["[T]he Constitution does not contemplate the federal judiciary deciding issues of state law among non-diverse litigation"]. Rather, when federal claims presented in a case originally filed in state court are dismissed, any remaining state law claims should be remanded back to state court for resolution under the general doctrine developed in United Mine Workers v. Gibbs, 383 U.S. 715 (1966). See In Re Conklin, 946 F.2d 306, 324 (4th Cir. 1991); Nicol v. Imagematrix, Inc., 767 F.Supp. 744, 746, 749 (E.D.Va. 1991); Mills v. Leath, 709 F.Supp. 671, 675-676 (D.S.C. 1988); Carnegie-Melon v. Cohill, 484 U.S. 343 (1988); Taylor v. Waters, 81 F.3d 429, 437 (4th Cir. 1996). This doctrine recognizes the state court's role in determining whether dismissal of state law claims is warranted, and, if such a dismissal were to be denied, that it would be much more appropriate for any such state law claims to be considered and tried by the state courts.

---

[10](...continued)
State of South Carolina has not consented to suit for damages for federal constitutional violations, even in its own courts, as the South Carolina Torts Claim Act expressly waives the State's immunity from suit in state court only for specified state tort causes of action. See S.C. Code Ann. § 15-78-20(b), (e); cf. Bergemann v. Rhode Island Dep't of Environmental Management, 665 F.3d 336, 342-343 (1st Cir. 2011); Lombardo v. Pennsylvania Dep't. of Public Welfare, 540 F.3d 190, 198-199 (3d Cir. 2008) ["We hold that while voluntary removal waives a State's immunity from suit in a federal forum, the removing State retains all defenses it would have enjoyed had the matter been litigated in state court, including immunity from liability]; Embury v. King, 361 F.3d 562 (9th Cir. 2004). Therefore, the State's immunity from suit for Plaintiff's constitutional claims is not effected by the removal of this case.

17



**Conclusion**

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.[11]

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

August 8, 2016
Charleston, South Carolina

---

[11]If the Court adopts the recommendations set forth herein with respect to Plaintiff's federal claims, then out of an abundance of caution, and in consideration of Plaintiff's pro se status, the Court may want to consider remand of Plaintiff's state law claim to the state courts for disposition, rather than outright dismissal of this claim at this time.

18



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

